OPINION. .
Davis, J.,
delivered the opinion of the court:
The claimants contracted with the defendants to transport mails monthly, in round trips, for ten years, between San Francisco, the Sandwich Islands, China, and Japan, which contract was soon modified by releasing them from the obligation to touch at the Sandwich Islands in the round trip. They sue in this action to recover for two round trips in which the transportation was begun before the expiration of ten years from the day when the service under the contract commenced, but was not finished until after the expiration of ten years from that day. The question which we are to decide is, whether these services were performed within the contract term.
*38 By tbe Act of February 17, 1865 (13 Stat. L., 430), tbe Postmaster-General was authorized to contract for tbe carriage of these mails—
fiy means of a monthly line of first-class American sea-going steamships * * * and to contract for said service for a term of not more than ten years, to commence from the day the first steamship shall depart from the port of San Francisco with the mails for China.
The Act of February 18,1867 (14 Stat. L., 394), authorized tbe change respecting tbe Sandwich Islands. With this exception there was no legislation affecting the rights of the parties under the contract. The contract which the Postmaster-General made with the claimants conformed to the act of 1865, and is-to be construed in accordance with the power which it conferred upon him.
The act clearly calls for a monthly service. The contract term for this service begins with the departure of the first vessel from San Francisco. The service is to consist in each case of a round trip; the term is for ten years. If we find the meaning of each of these terms, we shall solve the issues in this case.
A monthly trip is a trip once each calendar month. Two-trips begun in the same calendar month would not be a technical compliance with the contract. In case of a common carrier it is generally a trip on a given day of a month, announced beforehand for the convenience of the public. Ordinarily, and for a like reason, too, the monthly trips are so arranged as to make the periods intervening between them approximately equal.
A round trip is a trip from the port of departure to the same port on return. In the service sued for the round trips were from San Francisco to Japan and China and back. This trip, in the ordinary course of navigation, takes about seventy days, a fact which must have been known to Congress and to the contracting parties.
The contract calls for “ twelve round trips per annum,” to be performed by means of “a monthly line”; and the term “ten years” must be so construed as to permit this to be done. But it is a physical impossibility to begin twelve trips in twelve successive months, and to complete them as twelve round trips of seventy days each in the same twelve months. At least two of the trips must run over into the next year. Congress, therefore, must have intended that the voyages begun *39 in tbe last months of the year in which the contract was to expire should be within the contract, although prolonged into another year.
This disposes of the main question between the parties. The counsel for the Government has suggested a further difficulty as to one of the voyages.
TJnder the Act of June 1,1872 (17 Stat. L., 201), a further contract was made with the claimants for the performance of other and additional mail service on the same line. This act called for the construction of new vessels of a different class for the performance of the other service. The Tokio was one of these new vessels accepted under the Act of 1872, but it also performed the service in the last round trip, under the old contract, sued for in this action. It is contended that no recovery can be had under the contract for this service, because it was not performed in a vessel accepted under the act of 1865.
The Act of 1865 required the service tobe performed in “first-class American sea-going steamships”—
constructed of the best material and after approved models, with all the modern improvements adapted to sea-going steamships of the first class, and subject to inspection and survey by an experienced naval constructor to he detailed for that purpose by the Secretary of the Navy.
The Act of March 2,1872, provided, as to the service under that act, that it should be performed “upon the same conditions and limitations as prescribed by existing acts of Congress” in relation to the service under the Act of 1865, and further called for steamships which should be of not less than four thousand tons register each, and built of iron, and their engines and machinery should be wholly of American construction, and should be so constructed as to be readily adapted to the armed naval service of the United States in case of war; and that before acceptance the officers by whom they were inspected should report to the Secretary of the Navy and the Postmaster-General whether that condition had been complied with. This act clearly called for all the conditions required by the'Act of 1865, and superadded other conditions. Hence, a vessel accepted under this act more than came within the requirements of the Act of 1865. Such was the practical construction which the Government put upon the contract; for the findings show that the claimants have been paid for three round trips made by the Tokio under the old contract.
Judgment will be entered for the claimants for $83,333.33.